### TATE v. BALTIMORE & O. R. CO.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1915.)

#### No. 1300.

1. PATENTS ⊜129—SUIT FOR INFRINGEMENT—ESTOPPEL TO DENY VALIDITY OF PATENT—LICENSE.

While a licensee is estopped to deny the validity of the patent, when the license is at an end, whether by reason of the expiration of time or the completion of the number of patented articles for which it provided, there is no longer any contract relation, and no ground of estoppel.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. ⊜129.]

2. PATENTS ⊜129—SUIT FOR INFRINGEMENT—ESTOPPEL OF LICENSEE TO DENY VALIDITY OF PATENT.

Where the owner of a patent repudiates a license by suing the licensee for infringement, he cannot rely on it as an estoppel.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. ⊜129.]

3. PATENTS ⊜27—INVENTION—ADAPTING OLD DEVICE TO NEW USE.

A change in an old machine or instrument, which so affects its operation and construction as to adapt it to a new use, is patentable.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 31, 32; Dec. Dig. ⊜27.]

4. PATENTS ⊜328—VALIDITY—CONSTRUCTION OF CLAIMS.

The Tate patent, No. 643,560, for an improvement in locomotives, being a device for securing the boiler to the frame, claim 2, is void as too broad.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action by John H. Tate against the Baltimore & Ohio Railroad Company for infringement of letters patent No. 643,560, for an improvement in locomotives, granted February 13, 1900, to J. B. Tate. Judgment for defendant, and plaintiff brings error. Affirmed.

O. Ellery Edwards, Jr., of New York City (Ritchie, Janney, Griswold & Hamilton, of Baltimore, Md., and Joseph L. Levy, of New York City, on the brief), for plaintiff in error.

J. Snowden Bell and William A. Redding, both of New York City, for defendant in error.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

WOODS, Circuit Judge. In this action of Tate, patentee, to recover damages from the Baltimore & Ohio Railroad Company for infringement of a patent for an improvement in locomotives, the District Judge at the close of the evidence directed a verdict for the defendant, holding: (1) That the device of the patentee had been anticipated by the Sharp British patent; (2) that the second claim of the patentee under which the suit was brought was too broad, in that it covered, not only his device, but the prior art. Error is assigned in both holdings.

In his specifications the patentee said:

"My invention relates to an improvement in locomotives, and more particularly to means for securing the boiler on the frame of a locomotive; the object of the invention being to provide means of the above-mentioned character which will securely hold a boiler in place and at the same time permit the ready removal of the boiler when desired. A further object is to simplify and improve boiler-mountings."

His claims are:

"1. In a boiler-mounting, the combination with the mud-ring of the boiler and a frame of block depending from said mud-ring and a clamp secured to said frame and detachably connected with said depending block.

"2. In a device for securing a locomotive boiler on its frame, the combination with a mud-ring of a block secured to the mud-ring, having a groove therein, a clamp secured to the frame, and a flange or lip on the clamp to enter the groove and secure the block and frame together.

"3. In a device for securing a locomotive boiler on its frame, the combination with a mud-ring of blocks secured to the mud-ring and having grooves therein, clamping-plates disposed on the outer faces of the frame, flanges or lips on said plates to enter the grooves in the blocks, strips or plates disposed on the inner faces of the frame, bolts securing said first and last mentioned plates together and to the frame, and a strip disposed between said blocks and frame.

"4. In a device for securing a locomotive boiler on the frame, the combination with a mud-ring, of a block integral with the mud-ring and having a groove therein, a clamping-plate, having a lip to enter said groove, another plate disposed on the opposite face of the frame-section, and a bolt passing through the frame and plates and having a head between its ends seated in the frame and nuts adapted to be screwed on at the ends of the bolts to secure the parts together."

The action was brought under claim 2, and the plaintiff stands or falls on that.

[1] The first basis of assignment of error is that the Baltimore & Ohio Railroad Company, being a licensee of plaintiff, cannot dispute the patent. In the year 1902 the defendant obtained a license from the plaintiff to use his patent on 48 locomotives. The device was used according to the license on the 48 engines and defendant paid the price agreed on. Afterwards the defendant used the device on 999 locomotives without license, and it is for this use that the suit is brought.

The rule is that a licensee is estopped to deny the validity of the patent as long as he is acting under it; but when the license is at an end, whether by reason of expiration of time or the completion of the number of patented articles for which it provided, there is no longer any contract relation, and there is no ground of estoppel. The fact that

the license once existed is merely evidence of a former admission of the validity of the patent. Dueber Watch Case Mfg. Co. v. Robbins, 75 Fed. 17, 21 C. C. A. 198. The defendant's license and its estoppel ended with the use of plaintiff's device on 48 locomotives.

[2] It seems, also, that the patentee, in suing for infringement, and not for royalties, is held to repudiate the license and therefore cannot rely on it as an estoppel. St. Paul Plow Works v. Starling, 140 U. S. 184, 11 Sup. Ct. 803, 35 L. Ed. 404. The plaintiff's device, so far as its features are here involved, is made plain by the figure below showing the attachment on one side of the locomotive boiler.

We quote the plaintiff's description in his specifications, so far as it is pertinent to the issue and applies to the figure:

"*A* represents an engine-boiler and *B* a frame on which it is mounted. The boiler *A* is made with a mud-ring *1*, provided at opposite points with depending blocks or extensions *2*, provided on their outer faces with longitudinal grooves *3*. * * * My improved clamping-plate *6*, made L-shaped in cross-section and provided on its upper edge with an inwardly projecting flange or lip *7* to enter the groove *3* in the block *2*, is placed against the frame and block *2*, and a plate or strip *8* is disposed against the inner face of the block *2* and a frame *B*, and said plate *8* and clamping-plate *6* are made with aligned holes for the reception of bolts *10* to secure them in place."

The British patent is shown by this figure:

The defendant insists that it fits plaintiff's claim 2, as follows:

"In a device for securing a locomotive boiler on its frame, the combination with a mud-ring (*1*) of a block (*2*), secured to the mud-ring having a groove (*3*) therein, a clamp (*6*), secured to the frame and a flange or lip (*7*), on the clamp to enter the groove and secure the block and frame together."

It will be seen that in this contention the plate *8* on plaintiff's patent must be omitted, as it does not appear, nor is its place supplied by an equivalent, in the British patent. The issue, therefore, focuses on the plate or strip *8* disposed against the inner surface of the block *2*. The main object attained in both patents is holding the frame rigid laterally, while allowing longitudinal heat expansion in the groove provided. The difference between them and the advantage of the

Tate patent, according to the testimony of the expert, is that, in case the boiler is thrown in its movement to one side when the British patent is used, the stress is borne entirely by the frame on that side, while in the use of the Tate patent the stress from either side is borne by both frames in common. This is due to the use of plate 8 as a part of the clamp.

[3] It seems plain that the device is in this respect a useful improvement over the British patent. Nevertheless, if it is a mere adaptation of a mechanical instrument already in use, which would have occurred to a person of ordinary mechanical skill, it is not patentable. On the other hand, if it makes such a change in the operation and construction of an old machine or instrument, even by one step, as to adapt it to a new use, it is patentable. Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Mast v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856; Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 440, 31 Sup. Ct. 444, 55 L. Ed. 527.

[4] The regions of invention and mechanical skill fade into each other, and the line of just discrimination between them is often difficult to draw. In view, however, of the presumption in favor of the patent from its issue by the Patent Office, the evidence in its favor furnished by its use by defendant under a license, the evidence of the expert, and the evident difference between the Tate and the British patents, we think an issue of fact was presented, whether the plaintiff's patent was merely a mechanical adaptation of the prior art or a novel device performing a different function.

The same reasoning applies to the construction of Baldwin Locomotive Works relied on to show that the patent was covered by the prior art. The defendant contends that the cross-ties in that device performed the same functions as a clamping device including the plate 8 in the Tate patent. The considerations in favor of this view are not convincing; but, even if they were, it does not follow that the Tate patent is not patentable, since there was ground to conclude that it performed the same function by a new and better method.

Had plaintiff fully described his device in his claim 2, on which he stands or falls, we have endeavored to show there would be good ground for the jury to find that the use of plate 8 in his clamping device in combination was such an improvement in design and result on the prior art as to make it patentable. But we cannot resist the conclusion that the plaintiff's claim is broader than his device or invention, and that the British patent may be read on claim 2 just as clearly as the plaintiff's. Nothing is said about the plate 8 in the claim, and with that left out of the combination it will be seen by comparison that the British patent answers fully the description in claim 2, allowing for the difference in the location of the frame on American and British locomotives. That the plaintiff did not intend to limit his claim 2 to a combination with plate 8 as an essential feature of the device is shown by the fact that in his claims 3 and 4 he clearly embraces and describes that plate. The plaintiff's patent being at best nothing more than an improvement on the prior art, it must receive a narrow construction. Singer Mfg. Co. v. Cramer, 192 U. S. 265, 24 Sup. Ct.

291, 48 L. Ed. 437. On the point of reading a feature into a claim for the purpose of sustaining the patent, it is said in McCarty v. Lehigh Valley R. Co., 160 U. S. 110, 16 Sup. Ct. 240, 40 L. Ed. 358:

"While this may be done with a view of showing the connection in which a device is used, and proving that it is an operative device, we know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement. The difficulty is that, if we once begin to include elements not mentioned in the claim in order to limit such claims and avoid a defense in anticipation, we should never know where to stop. If, for example, a prior device were produced exhibiting the combination of these claims plus the springs, the patentee might insist upon reading some other element into the claims, such, for instance, as the side frames and all the other operative portions of the mechanism constituting the car truck, to prove that the prior device was not an anticipation. It might also require us to read into the fourth claim the flanges and pillars described in the third. This doctrine is too obviously untenable to require argument."

We conclude that the plaintiff's claim 2 must fail, because it is so broad as to be covered by the prior art.

Affirmed.